UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SURGERY CENTER LLC NOLA | CIVIL ACTION |
| VERSUS | NO: 25-1084 |
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A BLUE CROSS/BLUE SHIELD OF LOUISIANA, BLUE CROSS & BLUE SHIELD OF LOUISIANA, INC., and HMO LOUISIANA, INC. | SECTION: T (2) |

## ORDER AND REASONS

Before the Court is Plaintiff's Motion to Remand (R. Doc. 9). Having reviewed the record, the briefs, and the applicable law, the Court will **DENY** Plaintiff's Motion for the following reasons.

## I. BACKGROUND

This case concerns a fee dispute between Plaintiff, Surgery Center LLC NOLA, and three health-insurance-entity defendants: (1) Louisiana Health Service & Indemnity Company d/b/a Blue Cross/Blue Shield ("LHSI"), (2) Blue Cross & Blue Shield of Louisiana, Inc. ("BCBSLA"), and (3) HMO Louisiana, Inc. ("HMO") (collectively, "Defendants"). R. Doc. 1-1, pp. 1-11. Plaintiff seeks to recover payments from Defendants for medical services provided to patients insured by Defendants based on alleged wrongful conduct by Defendants that induced Plaintiff to render treatment to Defendants' insureds. R. Doc. 9-1, p. 3.

Specifically, Plaintiff provided medical care to "customers/insureds of BCBSLA" for

1

several years. R. Doc. 10, p. 9 (citing R. Doc. 1-1, p. 2). As a provider outside of BCBSLA's network, Plaintiff would contact BCBSLA "to verify that services are authorized to be performed on an out-of-network basis under the applicable plan or policy. R. Doc. 10, p. 9 (citing R. Doc. 1-1, pp. 2-3). After verification, Plaintiff would provide the approved care and submit a bill to BCBSLA for payment of services. R. Doc. 10, p. 9 (citing R. Doc. 1-1, p. 3). While Plaintiff seeks the full amount due for each of these bills, R. Doc. 1-1, pp. 3-4, BCBSLA contends that it only owes "the allowable reimbursement under the plan or policy of the 'customer/insured' of BCBSLA," R. Doc. 10, pp. 9-10.

Plaintiff filed its original state-court Petition against Defendants in the 24th Judicial District Court for the Parish of Jefferson on April 7, 2025, advancing legal theories of breach of contract, detrimental reliance, fraud, and negligent misrepresentation. R. Doc. 1-1, p. 1. Defendants removed the action to this Court on May 30, 2025, citing the following bases for removal: (1) the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), because Plaintiff's claims involve BCBSLA's administration of plans governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, and subject to directives from the United States Office of Personnel Management ("OPM"), and (2) federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the controversy arises under both the FEHBA and the Employee Retirement Income Security Act of 1974 ("ERISA"). R. Doc. 1, pp. 1-2.

Plaintiff subsequently filed the instant Motion to Remand to State Court, arguing that (1) the Federal Officer Removal Statute does not apply and (2) this Court is without federal-question jurisdiction. R. Doc. 9-1, p. 2. Specifically, Plaintiff contends that rather than claiming coverage benefits on behalf of its patients or seeking to enforce any federal right, it seeks enforcement of legal rights that it independently holds against defendants. *Id.* Plaintiff additionally requests an

2

award of just costs, actual expenses, and attorney's fees under 28 U.S.C. § 1447(c). *Id.* at pp. 14-15. Defendants filed a response memorandum in opposition to the Motion. R. Doc. 10. Thereafter, Plaintiff filed its reply in support, R. Doc. 18, and Defendants filed a sur-reply, R. Doc. 21, after seeking leave of court to do so, R. Docs. 19, 20. The matter is now submitted to the Court.

## II. LAW AND ANALYSIS

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). While federal courts typically "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum[,]" they must resolve factual disputes in favor of retaining federal jurisdiction when evaluating removal under the federal officer removal statute. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ragusa v. Louisiana Ins. Guaranty Ass'n*, 573 F. Supp. 3d 1046, 1051 (E.D. La. Nov. 23, 2021) (citing *Schnexnayder v. Huntington Ingalls, Inc.*, No. 20-775, 2020 WL 3970159, at * 3 (E.D. La. July 14, 2020) (Milazzo, J.); *Louisiana v. Sparks*, 978 F.2d 226, 232 (5th Cir. 1992)).

28 U.S.C. § 1442(a)(1), the federal officer removal statute, authorizes removal of a civil action commenced in a state court against or directed to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." In the words of the Fifth Circuit, the statute "allows federal officers, and private entities assisting them, to remove cases to federal court that ordinarily would not be removable." *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 414 (5th Cir. 2024) (citing *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020) (en banc)). Unlike the general removal statute, the federal officer

removal statute includes cases "that ordinary federal question removal would not reach[.]" *Latiolais*, 951 F.3d at 290. "Even in situations where the parties are not diverse and no federal question is raised in the complaint, § 1442 allows a case to be removed if the federal actor asserts a federal defense." *Martin*, 101 F.4th at 414 (citing *Latiolais*, 951 F.3d at 296). To establish jurisdiction under the statute, a defendant must show: (1) it has asserted a colorable defense, (2) it is a 'person' within the meaning of the statute, (3) it has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Latiolais*, 951 F.3d at 296 (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 396-400 (5th Cir. 1998)). While "[t]he absence of any element will defeat removal, *Martin*, 101 F.4th at 414, "the federal officer removal statute is to be broadly construed in favor of a federal forum," *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021); *see also Latiolais*, 951 F.3d at 290 (noting that the question whether to remand cases removed under the statute is weighed "without a thumb on the remand side of the scale.").

Here, the Court finds that Defendants are entitled to removal under the federal officer removal statute. First, Defendants have asserted at least one colorable defense. A federal defense is colorable so long as it is not "wholly insubstantial or frivolous." *Latiolais*, 951 F.3d at 297 (citation omitted). While neither the Fifth Circuit nor the Supreme Court has defined the term "colorable" in this context, the Fifth Circuit has "made clear that a defendant's federal defense need not prevail at the merits stage to warrant removal—it need only be material and non-frivolous."[1] *St. Charles Surgical Hospital, L.L.C. v. Louisiana Health Serv. & Indem. Co. (St. Charles I)*, 935 F.3d 352, 357 (5th Cir. 2019). Additionally, if a defendant asserts multiple possible federal defenses, "only one needs to be colorable for [defendant] to succeed on this factor." *See*

---

[1] The Fifth Circuit has reasoned that "[S]ection 1442 does not require the federal official or person acting under him to win his case before he can have it removed." *Latiolais*, 951 F.3d at 296 (internal quotations and citations omitted).

*id.* Here, Defendants have asserted the following defenses: (1) Plaintiff's state law claims are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1), R. Doc. 1, p. 12; (2) sovereign immunity applies "because any funds that would be used to pay the health benefits at issue come directly from the federal Treasury,"[2] *id.* at p. 13; (3) Plaintiff's state law claims "are displaced by federal common law, which governs the federal contract at the heart of these claims," *id.* at p. 14 (citing *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1095-1104 (10th Cir. 2015); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1235 (8th Cir. 2012)), and (4) the administrative scheme established by OPM requires Plaintiff "to exhaust its administrative remedies before commencing litigation," *id.* (citing *Bryant v. Blue Cross Blue Shield –Federal*, 2024 WL 2022288, at *2-3, 5 (S.D. Miss. May 7, 2024).

Plaintiff contends that Defendants cannot satisfy this element because its state law petition "expressly waives any and all federal law claims they may have against Defendants," including any claim for benefits under FEHBA or ERISA, and "limit[s] its claims to exclusively the state law breach of contract claim and state law tort claims that flow therefrom." R. Doc. 9-1, pp. 4-5, 12-14. In Plaintiff's view, because it is not seeking plan benefits or otherwise invoking federal law, Defendants' asserted federal defenses are irrelevant.

The Court disagrees. At this early stage, Defendants need not prove that their federal defenses will succeed on the merits; instead, they only need to show that at least one asserted defense is material and non-frivolous to satisfy this element of establishing jurisdiction under the federal officer removal statute. *See, e.g.*, *St. Charles I*, 935 F.3d at 357; *Latiolais*, 951 F.3d at 296-

---

[2] In support of their sovereign immunity argument, Defendants cite multiple district court opinions dismissing state law claims against a Service Benefit Plan administrator on sovereign immunity grounds, including one from this Court: *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, 2014 WL 4930443 (E.D. La. Sept. 30, 2014). R. Doc. 1, p. 13.

98 (holding that asserted federal defense to plaintiff's state law claims for negligent failure to warn about asbestos hazards and provide safety equipment was "colorable" where defendants offered evidence that elements of defense were satisfied). That requirement is satisfied here. In *St. Charles I*, the Fifth Circuit held that BCBS has raised a colorable federal defense by asserting FEHBA preemption, explaining that the preemption clause "displace[es] state law on issues relating to 'coverage or benefits' afforded by health-care plans." *St. Charles I*, 935 F.3d at 357-58 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 683 (2006)). This provision states, "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (*including payments with respect to benefits*) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance plans." 5 U.S.C. § 8902(m)(1) (emphasis added).

Here, Defendants assert the same defense. Defendants contend that at least some of Plaintiff's claims concern treatment provided to beneficiaries covered through the Service Benefit Plan[3] and therefore arise from BSBSLA's administration of FEHBA-governed plans. R. Doc. 1, pp. 1-2, 6-14. Defendants further contend that Plaintiff's claims, although styled as state law contract and tort claims, seek to impose liability based on representations allegedly made during the authorization and reimbursement process for out-of-network services rendered under those plans. *Id.* at pp. 4-7, 12. In other words, Defendants' argument is that Plaintiff's claims clearly implicate "payments with respect to benefits" under FEHBA-governed plans and therefore fall within the broad scope of the FEHBA's preemption provision. Given the Fifth Circuit's holding in *St. Charles I* and Defendants' allegations that Plaintiff's suit includes claims involving FEHBA beneficiaries, the Court cannot find that Defendants' FEHBA premption defense is wholly

---

[3] The Service Benefit Plan is also referred to as the Federal Employee Program ("FEP"). R. Doc. 10, p. 7.

insubstantial or frivolous. Accordingly, Defendants have satisfied the colorable defense requirement of the analysis.

Because Defendants have asserted at least one colorable federal defense, the Court need not determine whether Defendants' additional defenses of sovereign immunity, federal common law displacement, and exhaustion requirements would independently satisfy this element.

Second, there is no serious dispute as to whether Defendants are "persons" under the meaning of the federal officer removal statute. Defendants note in their Notice of Removal that the United States Code states that "unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, associations firms, partnerships, societies, and joint stock companies, as well as individuals." R. Doc. 1, pp. 14-15 (citing 1 U.S.C. § 1). They argue that "[b]ecause the context of the federal officer removal statute does not command a different result, the Fifth Circuit has held that corporate entities like BCBSLA qualify as 'persons' under [the statute]." *Id.* at p. 14 (citing *International Primate v. Adm'rs of Tulane Educ. Fund*, 22 F.3d 1094 (5th Cir. 1994) (affirming removal and holding Tulane University is "a person" within meaning of federal officer removal statute)). A review of cases from other circuits demonstrates that Defendants are correct in their assertion that courts routinely find that suits against entities administering the Service Benefit Plan are removable by the Plan's administrators under the federal officer removal statute. *See, e.g.*, *Ray v. Tabriz*, 110 F.4th 949, 956 (7th Cir. 2024) ("There is no indication that the definition of person in § 1442 excludes corporations, and the plaintiffs do not suggest otherwise."); *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1224 (9th Cir. 2017) (holding that corporate administrator of FEHBA insurance plan was "person" within meaning of statute); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 n.3 (8th Cir. 2012) ("[T]he 'person' contemplated by the federal officer removal statute includes corporations.").

Plaintiff does not argue that Defendants are not "persons" within the meaning of the federal officer removal statute. *See* R. Doc. 9-1. The Court finds that the element is satisfied because there is no contrary contextual indication that entities such as BCBSLA do not qualify as "persons" within the meaning of the statute, and the Fifth Circuit has treated similar entities—including BCBSLA itself—as persons for purposes of federal officer removal. *See, e.g.*, *St. Charles I*, 935 F.3d at 355 ("Blue Cross is a 'person' under the federal officer removal statute.").

Third, the Court finds that Defendants satisfy the element of acting "under" or "pursuant to" a federal officer's directions. "To satisfy the 'pursuant to' requirement, a private actor must go beyond mere compliance with the law and instead help the government 'fulfill other basic governmental tasks.'" *Martin*, 101 F.4th at 414-15 (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 153 (2007)). The Fifth Circuit has clarified that "acting pursuant to a federal officer's directions means that the relationship between the government and the private entity extends beyond a regulator/regulated relationship and will typically involve a contractual agreement or agency relationship." *Id.* at 415 (citing *Watson*, 551 U.S. at 156-57). Courts have upheld removal under the statute in cases that "involve relationships where the government has delegated legal authority to the private entity." *Id.*; *see also Latiolais*, 951 F.3d at 289 (where former employee sued his employer, a federal contractor, for injuries sustained while performing work for the Navy); *St. Charles Surgical Hospital v. La. Health Serv. & Indem. Co. (St. Charles II)*, 990 F.3d 447, 452 (5th Cir. 2021) (where insurance company contracted with federal government and government exercised a strong level of guidance and control over company); *Butler v. Coast Electric Power Ass'n*, 926 F.3d 190, 201 (5th Cir. 2019) (where private-entity defendants were "instrumentalities" of federal government that acted under federal agency's direction with a shared goal). If the defendant "cannot show that its relationship with the government involved anything

8

more than regulation," then the "pursuant to" element is not satisfied. *See, e.g.*, *Martin*, 101 F.4th at 415. Stated differently, the relationship must not be "too attenuated to show any delegation of legal authority." *Id.* at 416. Additionally, the Fifth Circuit has recently stated,

> We construe the "acting under" requirement broadly. A removing defendant need not prove that its conduct was precisely dictated by a federal officer's directive. Instead, the "acting under" inquiry examines the *relationship* between the removing party and the relevant federal officer. A relationship is sufficiently close if the federal officer exercises subjection, guidance, or control over the removing party and that party is assisting or helping carry out a federal officer's duties, as opposed to mere *complying* with the law. When a contractor helps the Government perform a job that, in the absence of a contract, the Government itself would have had to perform, and that relationship involves detailed regulation, monitoring, or supervision, the private contractor is "acting under" a federal officer's direction.

*Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 347-48 (5th Cir. 2024) (emphasis in original) (internal ellipses, quotation marks, and citations omitted).

Here, Defendants argue that they acted under OPM's directions in administering FEHBA-governed plans. R. Doc. 1, pp. 7-12; R. Doc. 10, pp. 10-18. Specifically, Defendants contend that the Service Benefit Plan is created by contract between OPM and the Blue Cross and Blue Shield Association, under which BCBSLA provides claim administration services "pursuant to the directives of Congress set forth in the FEHBA and the regulations and contractual obligations imposed by OPM."[4] R. Doc. 10, pp. 16-17. Defendants further contend that OPM's control over FEHBA-governed plans is sufficiently extensive to satisfy the "acting under" requirement because its conduct in authorizing medical services and reimbursing medical providers who deliver services to members of the Service Benefit Plan "represents conduct OPM would have had to undertake itself absent its contract with the BCBSLA." *Id.* at p. 17.

In response, Plaintiff argues that "Courts do not consider a group health insurer to be acting

---

[4] The Court notes that Defendants provide evidence to this effect with copies of relevant Service Benefit Plan / FEP documentation. *See, e.g.*, R. Doc. 10-6 (providing a detailed overview of the plan).

9

under federal authority when it makes alleged misrepresentations with regard to reimbursement." R. Doc. 9-1, p. 13 (citing *Edwards v. Blue Cross/Blue Shield of Tex.*, No. 05-0144, 2005 WL 1240577 (N.D. Tex. May 25, 2005); *Transitional Hosps. Corp. of La. v. Louisiana Health Serv.*, No. CIV.A.02-354, 2002 WL 1303121, at *3 (E.D. La. June 12, 2002)). Plaintiff further contends that this case does not arise out of procedures dictated by OPM, but instead from Defendants' alleged representations and misrepresentations to Plaintiff regarding authorization and payment for out-of-network services. R. Doc. 9-1, pp. 2-5, 12-16; R. Doc. 18, pp. 1-5. Plaintiff additionally emphasizes that it seeks to enforce only independent state law claims and has expressly waived any federal theory of recovery. R. Doc. 9-1, pp. 4-5; R. Doc. 18, pp. 2-5.

The Court is not persuaded by Plaintiff's attempt to characterize the case so narrowly. In *St. Charles I*, the Fifth Circuit analyzed the relationship between OPM and BCBSLA, finding "that OPM enjoys a strong level of guidance and control over [BCBSLA]" and, therefore, BCBSLA satisfied the "acting under" requirement. *St. Charles I*, 935 F.3d at 356. Specifically, the court noted that BCBSLA was at all times "subject to OPM oversight, uniquely operates within the United States Treasury, submits to OPM's regulatory requirements, and ultimately answers to federal officers" and noted that other circuits have found that such facts satisfy the "arising under" requirement.[5] *Id.* (quoting *Jacks*, 701 F.3d at 1234). Additionally, the Fifth Circuit expressly vacated a district court decision to remand a case on the basis of *Transitional Hospitals Corporation of Louisiana*, a case relied upon by Plaintiff in support of remand, holding that the district court erred in applying the "arising under" test too narrowly. *See St. Charles II*, 990 F.3d 447, 453-55.

---

[5] In a case referenced by the Fifth Circuit in *St. Charles I*, the Eighth Circuit states, "To deny removal solely because the carrier is allowed discretion within a minute area contemplated by the governmental Plan defies the overall purpose and thrust of the federal officer removal statute generally." *Jacks*, 701 F.3d at 1234.

Here, Defendants have alleged that at least some of Plaintiff's claims involve treatment rendered to FEHBA beneficiaries and therefore arise from BCBSLA's administration of FEHBA-governed plans. R. Doc. 1, pp. 6-10. Plaintiff's allegation that Defendants' conduct constitutes misrepresentations to the provider, as opposed to the mere following of OPM-mandated procedures, does not defeat this element at the removal state. Under *St. Charles II*, the relevant question is not whether OPM directed the exact alleged representation, but whether the challenged conduct occurred in the course of BCBSLA's administration of FEHBA-governed claims under OPM supervision and control. *St. Charles II*, 990 F.3d at 454-55. On the present record, the Court finds that Defendants have made such a showing and therefore satisfy the "acting under" requirement.

Fourth, Defendants have demonstrated that the conduct challenged by Plaintiff is connected or associated with acts taken pursuant to a federal officer's directions. To satisfy this final element, a defendant must demonstrate that the conduct is "connected or associated with" an act pursuant to a federal officer's directions.[6] *Latiolais*, 951 F.3d at 296; *St. Charles II*, 990 F.3d at 454. Defendants argue that this element is satisfied because Plaintiff's claims arise from authorization, coverage verification, and payment representations allegedly made in connection with treatment rendered to Defendants' insureds, including beneficiaries covered through FEHBA-governed plans. R. Doc. 1, pp. 4-7; R. Doc. 10, pp. 13-18. In Defendants' view, because these alleged acts occurred in the course of BCBSLA's administration of FEHBA-governed claims, the conduct challenged by Plaintiff is at the very least "connected or associated with" the acts taken

---

[6] The Fifth Circuit has "noted that when it amended the statute in 2011, 'Congress broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office.'" *St. Charles II*, 990 F.3d at 452 (quoting *Latiolais*, 951 F.3d at 292). "[I]nstead of considering whether there is a 'direct causal nexus' between the removing defendant's actions and a federal officer's instruction, the proper inquiry centers on whether that defendant's actions 'related to' a federal objective." *Id.* (quoting *Latiolais*, 951 F.3d at 291, 296).

11

under OPM's supervision and direction. *Id.* Plaintiff, on the other hand, maintains that its claims are based only on Defendants' alleged misrepresentations to Plaintiff and not on any federally directed conduct. R. Doc. 9-1, pp. 2-5, 12-16; R. Doc. 18, pp. 1-5.

The Court finds that Defendants have satisfied this element. As explained above, Defendants have adequately shown that at least some of Plaintiff's claims involve treatment rendered to FEHBA beneficiaries and therefore arise from BCBSLA's administration of FEHBA-governed plans. Under *Latiolais* and *St. Charles II*, that showing is enough to satisfy this element because the relevant inquiry is whether the challenged conduct is connected or associated with the administration of FEHBA-governed claims under OPM's supervision and direction. *See Latiolais*, 951 F.3d at 296; *St. Charles II*, 990 F.3d at 454-55. Because Plaintiff's claims arise from preauthorization and payment-related communications allegedly made in the course of that administration, the Court finds that the fourth element is met.

Accordingly, the Court concludes that Defendants have satisfied each of the four elements required to establish jurisdiction under the federal officer removal statute. Furthermore, the Court finds that Plaintiff's disclaimers and waivers do not compel remand in this instance. As mentioned in the Court's analysis of the federal officer removal elements, Plaintiff argues that its petition "expressly waives any and all federal law claims they may have against Defendants," including any claim for benefits under FEHBA or ERISA, and "limit[s] its claims to exclusively the state law breach of contract claim and state law tort claims that flow therefrom." R. Doc. 9-1, pp. 4-5, 12-14. Plaintiff avers that these disclaimers are binding and dispositive because they foreclose any contention that this action involves federally governed claims or conduct undertaken under federal authority. R. Doc. 18, pp. 2-5

The Court disagrees. Although courts may in some circumstances give effect to express

disclaimers, the disclaimers here do not segregate federal claims from nonfederal claims with sufficient factual precision to defeat removal under § 1442(a)(1). Plaintiff's petition does not identify which patients, claims, or transactions are excluded from this suit, nor does it carve out claims by patient, time period, or another objective factual boundary. Instead, Plaintiff seeks relief based on a broad course of conduct spanning several years and involving an unidentified group of patients. Meanwhile, Defendants allege that Plaintiff presented BCBSLA with a pre-Petition demand "which expressly demanded payment for these specific (FEP and ERISA) claims." R. Doc. 21, p. 2 (citing R. Docs. 10-1, 10-2, 10-3). Because the petition does not distinguish federal claims from nonfederal claims by objective factual criteria, the Court cannot determine from the face of the pleading that all federally governed claims have been excluded. Thus, the Court agrees with Defendants' contention that the waivers contained in Plaintiff's Petition are "indistinguishable from the categorical waivers/disclaimers that federal courts have repeatedly held insufficient to defeat 'federal officer' removal."[7] *Id.* at p. 3. (citations omitted). On this record, the Court cannot conclude that Plaintiff has successfully excised all federally governed claims from the case simply by categorically disclaiming any federal theory of recovery.

The Court is also unpersuaded by Plaintiff's argument that Judge Morgan's July 21, 2021, order in the later *St. Charles* matter compels a different result. *See* R. Doc. 9, p. 10; R. Doc. 18, p. 5 (citing *St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem. Co. (St. Charles III)*, No. CV 19-13497, 2021 WL 3077043, at *4 (E.D. La. July 21, 2021) (addressing issues on remand

---

[7] Additionally, Defendants cite Fifth Circuit authority standing for the proposition that waivers of "claims upon which federal jurisdiction may be founded must be 'binding and irrevocable' so as to establish with a 'legal certainty' that those claims are excluded from the scope of the state court petition." R. Doc. 10, pp. 20-21 (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995); *Cat 5 Pro LLC v. State Farm Fire & Casualty Co.*, 2024 WL 58180, *2 (W.D. La. Jan. 4, 2024); *Legendre v. Anco Insulations, Inc.*, 2012 WL 2064537, *4 (M.D. La. May 14, 2012, *report and recommendation adopted*, 2012 WL 2064533 (M.D. La. June 7, 2012); *St. Augustine High School, Inc. v. Applewhite*, 2011 WL 3423942, *3 (E.D. La. August 5, 2011)).

13

from *St. Charles II*)). In that order, the Court found that Plaintiff's waivers of federally-governed claims were "valid and enforceable" and therefore did not address whether BCBSLA "acted under" OPM. *St. Charles III*, 2021 WL 3077043, at *4. However, despite Plaintiff's contention that this Court should reach a similar conclusion because its waivers and disclaimers "are identical to the ones Judge Morgan ruled upon," R. Doc. 18, p. 5, the Court's finding in that case was based not only on the language of the waivers and disclaimers but also the presence of additional support in the record that guaranteed the validity and enforceability of the waivers, *St. Charles III*, 2021 WL 3077043, at *4. There, the record included formal stipulations, "signed by Plaintiffs' representatives under penalty of perjury," clarifying that "Plaintiffs cannot use FEHBA-governed and ERISA-governed claims and/or plans as part of their case in any way" and prohibiting "Plaintiffs from seeking or producing discovery related to FEHBA-governed and ERISA-governed claims and/or plans." *Id.* No such stipulations have been filed in this case. By contrast, Plaintiff offers only the petition's categorical disclaimers and has not identified which specific claims are excluded. Additionally, Defendants here allege that Plaintiff's own pre-suit demand materials included claims involving FEHBA beneficiaries. R. Doc. 1, pp. 6-7.

Stated differently, the waivers in *St. Charles III* were reinforced by factual findings and formal stipulations, and no such reinforcement of the waivers exists in this case. Even assuming that Plaintiff's waivers are sincere, they do not alter the Court's conclusion that, on the present record, Defendants have shown that at least some of the claims encompassed by this suit involve BCBSLA's administration of FEHBA-governed plans. Accordingly, Plaintiff's disclaimers and waivers do not require remand of this case.

Finally, having concluded that removal was proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), the Court need not address the parties' remaining arguments

14

regarding alternative grounds for federal jurisdiction.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand (R. Doc. 9) is **DENIED**.

New Orleans, Louisiana, this 31st day of March 2026.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE